**BRIAN WEBB LEGAL**
Joshua J. Leonard (7238)
josh@brianwebblegal.com
Brian L. Webb (7448)
brian@brianwebblegal.com
971 E. Winding Creek Dr.
Eagle, Idaho 83616
Telephone: (208) 331-9393
Fax: (208) 331-9009

DAVIS WRIGHT TREMAINE LLP
T. Scott Thompson (pro hac vice forthcoming)
scottthompson@dwt.com
Van Bloys (pro hac vice forthcoming)
vanbloys@dwt.com
1919 Pennsylvania Ave. NW, Suite 800
Washington, D.C. 20006
Telephone: (202) 973-4200

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HORIZON TOWER LIMITED PARTNERSHIP-II, and HORIZON TOWER, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ADA COUNTY, IDAHO, and BOARD OF ADA COUNTY COMMISSIONERS,<br><br>Defendants | Case No.: 1:19-CV-125<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED TREATMENT** |

For their Complaint against defendants Ada County, Idaho and the Board of Ada County

Commissioners (collectively the "Defendants" or the "County"), Plaintiffs Horizon Tower

Complaint for Declaratory and Injunctive Relief and Expedited Treatment – Page 1

Limited Partnership-II and Horizon Tower, LLC (collectively "Horizon" or "Plaintiffs"), by and through their undersigned counsel, upon knowledge as to their own actions and dealings and upon information and belief as to Defendants and their actions, allege as follows:

**Nature of the Action**

This action arises out of the Defendants' unlawful denial of Plaintiffs' application to construct a wireless telecommunications facility in the form of a stealth monopine tower at 2557 N. Sky View Lane, in Ada County.  The County's denial is not supported by substantial evidence in a written record, is unlawfully based on fears regarding radio frequency ("RF") emissions, and effectively prohibits personal wireless service in the vicinity of the proposed facility. Accordingly, the County's denial of Plaintiffs' application violates the Federal Communications Act, as amended, 47 U.S.C. § 332(c)(7) (the "Communications Act" or "Act").  In addition, the County's denial is not supported by substantial evidence, in violation of Idaho's Local Land Use Planning Act ("LLUPA"), codified at Title 67, Chapter 65, Idaho Code, and the County's denial was the result of a biased decision maker that deprived Plaintiffs of their rights to due process under the United States and Idaho Constitutions.

Plaintiffs therefore seek an injunction from this Court directing the County to grant Plaintiffs' application for the proposed facility in accordance with Plaintiffs' rights under the Communications Act.

Plaintiffs request expedited treatment of this Complaint pursuant to 47 U.S.C. § 332(c)(7)(b)(v).

**Parties**

1.      Plaintiff Horizon Tower Limited Partnership-II is a Kansas limited partnership with its principal place of business in Danville, California.  Plaintiff Horizon Tower, LLC is a

limited liability company with its principal place of business in Danville, California.  Horizon Tower, LLC is the operations partner for Horizon Tower Limited Partnership-II.  Plaintiffs are registered to do business in the state of Idaho.  Horizon owns and manages tower assets and wireless infrastructure that are used by national and regional wireless carriers to provide voice, data, and wireless broadband internet services to end-user consumers in Idaho and throughout the western United States.

2.      Defendant Ada County, Idaho is a county located in southwestern Idaho. Pursuant to Rule 4(d)(4)(B) of the Idaho Rules of Civil Procedure, the County may be served by delivering a copy of the summons and complaint to the Clerk for Ada County, Idaho.

3.      Defendant the Board of Ada County Commissioners ("Board") is comprised of members Kendra Kenyon, Diana Lachiondo, and Rick Visser.  The Board maintains administrative offices at 200 W. Front Street, Boise, Idaho 83702.  Among other things, the Board hears, acts upon, and issues final decisions in appeals of land use matters, including those related to wireless communications facilities.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because of the existence of federal questions arising under the Communications Act of 1934, as amended by the Communications Act of 1996 (the "Communications Act").  The Court has authority to issue declaratory judgment relief pursuant to 28 U.S.C. § 2201(a).

5.      The Court has supplemental jurisdiction over Plaintiffs' claim under Idaho law pursuant to 28 U.S.C. § 1367(a) because the claim is so related to Plaintiffs' federal claims that it forms a part of the same case or controversy under Article II of the United States Constitution.

6.      Horizon has standing pursuant to 47 U.S.C. § 332(c)(7)(B)(v) as a person adversely affected by the Defendants' actions, which are inconsistent with 47 U.S.C. § 332(c)(7)(B).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the acts, events, or omissions giving rise to this action occurred in Ada County in the District of Idaho.

## Statement of Facts

### Federal Statutory Control of Wireless Siting

8.      The Communications Act governs federal, state, and local government regulation of the siting of personal wireless service facilities such as the one at issue here.  47 U.S.C. § 332(c)(7)(B).

9.      The Communications Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with 47 U.S.C. § 332(c)(7) of the Communications Act may seek review in federal courts, and that the courts shall hear and decide the action on an expedited basis.  47 U.S.C. § 332(c)(7)(B)(v).

10.     Horizon constructs, owns, and manages tower assets and wireless infrastructure that are used by national and regional wireless carriers to provide voice, data, and wireless broadband internet services to end-user consumers in Idaho and elsewhere in the United States. Horizon leases space on its facilities to national and regional wireless carriers, including Verizon Wireless, which provide personal and advanced wireless services, as well as other telecommunications services, as those terms are defined under federal law, to end-user wireless customers.  In providing this valuable service to wireless carriers, Horizon is facilitating the

development and deployment of advanced wireless and broadband connectivity, consistent with the goals of the Communications Act.

11.     To provide reliable service to an end user, coverage and capacity from cell sites must overlap in a grid pattern resembling a honeycomb.  If Horizon is unable to construct a cell site within a specific geographic area, the wireless carriers it serves will not be able to provide service to consumers within that area.

12.     To determine locations or areas in which a new wireless facility is required, radio frequency ("RF") engineers use various techniques, such as sophisticated computer programs and field testing, to complete a field propagation study, which shows where cell sites need to be located to provide service.  The propagation study also takes into account the topography of the land, the coverage boundaries of neighboring cell sites, and other factors.  For a wireless network to perform adequately, cell sites must be located, constructed, and operated so that the wireless carrier can achieve reliable service for its customers.  If there is no functioning cell site within a given area, there will be no service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and connection failures, including the potential inability to make E-911 emergency calls.

### The Proposed Facility and Application Process

13.     Based upon research and analysis by RF engineers, Verizon Wireless determined that it has a significant gap in its ability to provide service in Ada County in an area in the vicinity of N. Sky View Lane.

14.     This gap is significant based on the population of and vehicular traffic in the area affected and must be remedied for Verizon Wireless to provide service to the targeted area.

15.     Verizon Wireless initially provided Plaintiffs with a search area established by its RF engineers, and requested that Plaintiffs develop a wireless communications facility somewhere within that search area so that it may remedy its significant gap in service in that area.

16.     Plaintiffs investigated suitable properties within the search area that were appropriate for a wireless communications facility.  An appropriate candidate would have to fill the significant gap in service, comply with local zoning standards, be leasable, and be buildable. Plaintiffs considered and ruled out other properties as alternative locations for its proposed facility.  Plaintiffs had to rule out any properties that were in the search ring that were located within the City of Eagle, Idaho, because under the Eagle municipal code, a tower must be set back a minimum of two times the height of the tower from all property lines. None of the properties in the search ring that are located within the City of Eagle would satisfy the City's zoning setback requirements.  The City of Eagle Mayor and City Council have made it clear by their public comments that the City Council will not approve any tower in the City in that area. In addition, Horizon evaluated at least seventeen properties in the search ring, but none were available or feasible for installation of a wireless facility to remedy the significant gap in service.

17.     After investigating and evaluating properties within the search area, Plaintiff concluded that the subject site at 2557 N. Sky View Lane (the "Proposed Site"): (1) was in the search area; (2) was in a zone in which wireless communications facilities are conditionally allowed; (3) had a property owner willing to lease a portion of the land for construction of a wireless facility; and (4) was suitable for constructing and maintaining a wireless communications facility.

18.     The Subject Property is a 5-acre parcel of property that is within Ada County in a Rural-Urban Transition ("RUT") zoning district.

19.     Section 8-5-3-114 of Ada County Code (the "County Code") sets forth zoning application requirements for new commercial tower structures.  Section 8-5-3-114 states that a person seeking to install a personal wireless service facility that is not a collocation on an existing approved tower structure must apply for a Conditional Use Permit ("CUP").  In addition, the applicant must meet the general requirements for a CUP set forth in 8-5B of the County Code.

20.     Skyview Development Corporation is the owner of the Proposed Site.

21.     On December 14, 2017, Skyview Development Corporation and Horizon entered into a Lease Agreement to lease space at the Proposed Site for the installation of a wireless tower.

22.     On June 20, 2018, Powder River Development Services, LLC, as the Contractor on behalf of Horizon, filed an application for a CUP for the construction and installation of a wireless communications facility at the Proposed Site (the "Application").  In support of the CUP Application, Plaintiffs submitted, among other things, a Detailed Letter, Master Application/Petition form, Neighborhood Meeting Certification, Conditional Use Checklist, Pre-Application conference notes, and Master Site Plan with construction drawings, all as required by County Code § 8-5B and County regulations.

23.     Initially, Horizon's Application proposed a stealth monopine with a height of 85 feet.

24.     Based on feedback from neighbors, Horizon ultimately applied to install a 65-foot tall tower designed to resemble a pine tree to conceal the tower and make it "stealth" (the

"Stealth Tower").  In addition, after meeting with some of the Opponents, Horizon moved the Proposed Facility to the back of the property to reduce the perceived visual impact.  Thus, the Stealth Tower would be sited on a 50'x50' gravel compound, surrounded by a solid vinyl fence, with vegetative screening in the form of 20 evergreen trees (with the Stealth Tower, as a whole, "Proposed Facility").

25.     The Stealth Tower is designed to remedy the significant gap in service currently suffered by Verizon Wireless in the area of the Proposed Site, but will also be able to accommodate at least two additional wireless carriers and thus eliminates the need for up to two additional structures in the vicinity of the Proposed Site.

26.     The Application was deemed complete under the requirements of Section 8-5B of the County Code, governing CUPs, Section 8-5-3-114 of the County Code, governing commercial wireless towers, and the County's applicable regulations governing CUP applications.

27.     The Proposed Facility and the Application fully complied with the requirements of Section 8-5B of the County Code, governing CUPs, and Section 8-5-3-114 of the County Code, governing commercial wireless towers.

28.     Under Section 8-5-3-114.D.4.c of the County Code, as a condition of obtaining a CUP for a wireless tower that is more than 50 feet but less than 80 feet tall, the applicant must demonstrate that there are no existing communications towers or structures within a one-half mile radius that can accommodate co-location.  In this case, there are no existing communications towers or structures within a one-half mile radius that can accommodate co-location and remedy Verizon Wireless's significant gap in service.  The closest tower is 1.83 miles from the Proposed Site.

29.     On October 18, 2018, the Ada County Planning and Zoning Commission (the "Commission") held a public hearing to evaluate the Application.

30.     At the October 18, 2018 hearing, Horizon presented evidence and testimony, in addition to the Application and its supporting materials, demonstrating that the Proposed Facility complies with all County Code requirements and satisfies all requirements for a CUP.

31.     Among other things, Horizon also presented evidence demonstrating that Verizon Wireless suffers from a significant gap in wireless service in the area around the Proposed Facility, including but not limited to testimony from its RF engineer expert and supporting RF propagation studies performed by the RF engineer expert.

32.     Among other things, Horizon also presented evidence demonstrating that it had undertaken a thorough and good faith investigation of potential alternative properties and locations within the necessary search area defined by Verizon Wireless as necessary to remedy the significant gap in service, including but not limited to testimony from Horizon's site acquisition manager regarding his investigation of potential alternatives.

33.     Some local residents presented comments to the Commission in opposition to the Application that were overwhelmingly focused on their fears regarding the alleged potential effects of RF emissions from the Proposed Facility.

34.     On October 18, 2018, the Commission issued a "Findings of Fact, Conclusions of Law and Order" ("Commission Order") approving Horizon's CUP Application, subject to standard conditions.

35.     The Commission's Order found, among other things, that Horizon's Proposed Facility would not have "undue adverse impacts on surrounding properties" because "[a]lthough the cell tower will be visible from neighboring properties, adjacent uses will be able to continue

to function as they have in the past" and the cell tower will not "impede the normal use and development of surrounding properties; or create undue adverse impacts."  The Commission's Order also found that the Proposed Facility is consistent with the applicable comprehensive plan, including because "[c]ell towers need to be located relatively close to their customers in order to provide coverage for the area."  In addition, the Commission's Order also found that "the tower is architecturally and visually compatible with existing structures and uses in the area," particularly based on the reduced height, stealth nature of the monopine design, and the site location in the back corner of the property with landscape buffer.

36.     On November 2, 2018, a group of property owners (Mr. Tharp, on behalf of Ms. Hodge, Mr. and Mrs. Beach, Mr. and Mrs. Tassano, Mr. Fischer, Mr. and Mrs. Gardner, Mr. and Mrs. Allen, and Mr. AJ Osborn) (the "Opponents") filed an appeal of the Commission's approval of the CUP Application to the Board pursuant to Section 8-7-2 of the County Code.

37.     The Board heard testimony on January 30, 2019.

38.     At the January 30, 2019 hearing, in addition to the materials submitted to the Commission, Horizon presented evidence demonstrating that the Opponents' appeal was improperly based on concerns about RF emissions.

39.     Horizon also demonstrated that the Proposed Facility was not a fire hazard and would be safe, including evidence from the City of Eagle Fire Department, which is responsible for the fire protection district in which the area of the Proposed Site is located.

40.     Horizon also introduced evidence demonstrating further that the Proposed Facility would be architecturally and visually compatible with the existing structures, vegetation, and uses in the area, particularly as a result of the proposed camouflage techniques, the proposed additional landscaping, and the existing and surrounding trees in the vicinity.

41.     Horizon also demonstrated that the Opponents' arguments regarding potential adverse impacts were not supported by the evidence.

42.     Horizon also further demonstrated the existence of the significant gap in Verizon Wireless' service that would continue without the Proposed Facility.

43.     Horizon also further demonstrated, including through testimony from its site acquisition manager, that it had performed a thorough and good faith investigation into potential alternative locations and designs, but that there are no existing structures that could be used and no alternative locations within the relevant search ring that were actually available, that were feasible under the relevant zoning laws, or that would remedy the significant gap in service.

44.     The Opponents presented no evidence disputing the existence of a significant gap in Verizon Wireless' service in the area around the Subject Property.

45.     At the January 30, 2019 hearing, the Opponents submitted an appraisal that purported to conclude that the Proposed Facility would have an adverse impact on the property values of the adjacent properties ("Opponents' Appraisal").

46.     The Opponents' Appraisal explicitly stated that its conclusion was based on people's alleged fears or concerns regarding the potential health effects of RF emissions.

47.     In response to the Opponents' Appraisal, Horizon also introduced evidence demonstrating significant flaws in the methodology of the Opponents' Appraisal.

48.     The comments and opposition by Opponents consisted of generalized opposition to any wireless facility in the area.

49.     The Board issued a Finding of Facts, Conclusions of Law and Order (the "Denial") by which the Board granted the Opponents' appeal and, in so doing, denied Horizon's Application on February 6, 2019.

50.     Pursuant to Idaho Code § 67-6535 and Ada County Code § 8-7E-5.A, on February 20, 2019, Horizon filed a Motion for Reconsideration before the Board.

51.     In its Motion for Reconsideration, Horizon again demonstrated that the Application met or exceeded all of the standards and criteria for approval of a CUP, as the Commission previously concluded.

52.     Among other things in its Motion for Reconsideration, Horizon described how the Board's Denial applied, and was based on, incorrect standards under the County Code, relied on testimony and evidence that was inaccurate and not credible, and was not supported by substantial evidence in the record.  For example, the Board's Denial alleged that "Applicant failed to show they explored locating the tower on other more compatible sites in the area which would achieve the same or similar coverage."  Findings of Fact, Conclusions of Law and Order, dated February 6, 2019, at p. 11.  However, the County Code does not impose a requirement that the applicant demonstrate that it "explored locating the tower on other more compatible sites in the area which would achieve the same or similar coverage."  *See* Ada County Code § 8-5-3-114.  Thus, the Board's Denial was based on criteria that are not applicable under the County Code.

53.     Among other things in its Motion for Reconsideration, in response to the alleged alternatives raised by Opponents, and in addition to the evidence already in the record, Horizon submitted an affidavit from its site acquisition manager demonstrating that Horizon had undertaken a good faith and thorough investigation of potential alternatives, and no feasible alternatives were available.  Horizon also submitted an affidavit from its RF engineer demonstrating that the alleged alternatives asserted by the Opponents would not remedy Verizon Wireless' significant gap in service in the area of the Proposed Site.

54.     Among other things in its Motion for Reconsideration, in response to the Opponents' Appraisal, in addition to demonstrating that the Opponents' Appraisal was unlawfully based on fears regarding the alleged health effects of RF emissions, and that the Opponents' Appraisal was based on fundamental flaws in the properties used for comparison, Horizon introduced evidence demonstrating that the same company that produced Opponents' Appraisal had previously produced multiple appraisal reports from multiple locations around the country that contradicted the conclusions in the Opponents' Appraisal.

55.     The Board denied Horizon's Motion for Reconsideration on March 19, 2019 (the "Reconsideration Denial").

56.     The Reconsideration Denial was the County's final action on the Application under Idaho and federal laws.

57.     The Board's Denial has the effect of prohibiting the provision of personal wireless services to individuals who live, work, commute, and otherwise travel through the area surrounding the Proposed Site.

58.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(v), "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.  The court shall hear and decide such action on an expedited basis."

59.     This action is timely filed because it was filed within thirty days after the Board's Reconsideration Denial, which is the final action of Defendants.

<u>COUNT I</u>
**(Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) –**
**Effective Prohibition of Personal Wireless Services)**

60.     Plaintiffs incorporate by reference and reallege the foregoing factual allegations in Paragraphs 1 through 59 as if fully set forth herein.

61.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any . . . local government thereof . . . shall not have the effect of prohibiting the provision of personal wireless services."

62.     Verizon Wireless has a significant gap in reliable personal wireless service in an area around the Proposed Site.

63.     Plaintiffs undertook a good faith and thorough investigation of potentially alternative sites in and around the area of the Proposed Site within which Verizon Wireless engineers determined that a significant gap exists and that a wireless telecommunications facility must be located to fill the significant gap and function effectively within Verizon Wireless's network of existing facilities.  Within the relevant search area, there are no existing structures on which a wireless facility could be installed to cure Verizon Wireless' significant gap in wireless service, and no less intrusive sites are feasible or practically available to remedy the significant gap in Verizon Wireless' service.

64.     The Stealth Tower is a stealth installation designed to look like a pine tree that will be similar to other evergreen trees in the area and surrounded by additional landscaping proposed as part of the Application.

65.     The Proposed Site and Plaintiffs' design of the Stealth Tower provides the least intrusive means by which to fill the significant gap in Verizon Wireless' personal wireless service.

66.     The Denial and the Reconsideration Denial materially inhibit or limit Verizon Wireless's ability to achieve its service goals, and as a result effectively prohibit Verizon Wireless from providing personal wireless service.

67.     Thus, the County's denial of Plaintiffs' Application effectively prohibits the provision of personal wireless service in violation of, and is preempted by, Section 332(c)(7)(B)(i)(II) of the Communications Act, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order commanding the County to approve Horizon's CUP Application and all related permits.

### COUNT II
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iii) – Lack of Substantial Evidence)

68.     Plaintiffs incorporate by reference and reallege the foregoing factual allegations in Paragraphs 1 through 67 as if fully set forth herein.

69.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a . . . local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be . . . supported by substantial evidence contained in a written record."

70.     As demonstrated above, Plaintiffs' Application with respect to constructing the Proposed Facility at the Proposed Site satisfied all of the criteria set forth in the County Code.

71.     Among other things, Horizon submitted evidence demonstrating that the Proposed Facility satisfied the requirements of the County Code, including but not limited to that the Proposed Facility would not be detrimental to the public health, safety, or welfare, that the Proposed Facility shall not create undue adverse impacts on surrounding properties, that the Proposed Facility is consistent with the applicable comprehensive plan, that the Proposed Facility complies with the purpose statement of the applicable base district and with the specific

use standards as set forth in the County Code, that the Proposed Facility complies with all applicable county, state, and federal regulations, and that the Proposed Facility shall not impede the normal development of surrounding property.

72.     The Board's Denial and Reconsideration Denial were based on standards that were not set forth in or consistent with the County Code and the Board's Denial and Reconsideration Denial were not supported by substantial evidence in the record.  47 U.S.C. § 332(c)(7)(B)(iii).

73.     Consequently, the County's decision is in violation of, and preempted by, Section 332(c)(7)(B)(iii) of the Communications Act, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order commanding the Defendants to approve the CUP Application.

## COUNT III
### (Violation of 47 U.S.C. § 332(c)(7)(B)(iv) – Unlawful Denial On the Basis of Environmental Effects of RF Emissions)

74.     Plaintiffs incorporate by reference and reallege the foregoing factual allegations in paragraphs 1 through 73 as if fully set forth herein.

75.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(iv), "[n]o State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions."

76.     The Stealth Tower is designed to conceal the antennas in a structure designed to resemble an evergreen pine tree.

77.     Evidence on the record from Horizon addressed concerns regarding perceived health effects related to RF emissions.  Specifically, Horizon demonstrated that the maximum

permissible exposure levels from the Proposed Facility will be far below the relevant FCC exposure limits for electromagnetic fields. There is no record evidence refuting Horizon's testimony and evidence in this regard.

78.     The community opposition to the Application specifically and repeatedly expressed concerns over the alleged health effects related to RF emissions from the Proposed Facility.

79.     In addition to the testimony by Opponents regarding their opposition based on fear of the alleged health effects of RF emissions, the County's Denial relies on Opponents' Appraisal.  The Opponents' Appraisal explicitly stated that its conclusion that the Proposed Facility would likely result in decreased property values of surrounding properties was based on the perception of harm caused by RF emissions from the Proposed Facility.

80.     Accordingly, and on information and belief, the County's denial of the Application was based on concerns about the alleged environmental effects of RF emissions.

81.     Accordingly, the County's denial of the Application constitutes an unlawful denial based on concerns about the health and environmental impacts of RF emissions in violation of the Communications Act.

82.     Consequently, the County's denial of Horizon's Application for the Stealth Tower is in violation of, and preempted by, Section 332(c)(7)(B)(iv) of the Communications Act, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order commanding the Defendants to approve the CUP and all related permits.

## COUNT IV
### (Violation of Idaho Code § 67-5279)

83.     Plaintiffs incorporate by reference and reallege the foregoing factual allegations in paragraphs 1 through 82 as if fully set forth herein.

84.     Under Idaho Code § 67-5279(3), the Board's decision may be set aside if it:

(a)     violates constitutional or statutory provisions;

(b)     exceeds the Board's statutory authority;

(c)     is made upon unlawful procedure;

(d)     is not supported by substantial evidence on the record as a whole; or

(e)     is arbitrary, capricious, or an abuse of discretion.

85.     As demonstrated above, Plaintiffs' Application with respect to constructing the Proposed Facility at the Proposed Site satisfied all of the criteria set forth in the County's Code.

86.     Among other things, Horizon submitted evidence demonstrating that the Proposed Facility satisfied the requirements of the County Code, including but not limited to that the Proposed Facility would not be detrimental to the public health, safety, or welfare, that the Proposed Facility will not create undue adverse impacts on surrounding properties, that the Proposed Facility is consistent with the applicable comprehensive plan, that the Proposed Facility complies with the purpose statement of the applicable base district and with the specific use standards as set forth in the County Code, that the Proposed Facility complies with all applicable county, state, and federal regulations, and that the Proposed Facility will not impede the normal development of surrounding property.

87.     The Board's Denial and Reconsideration Denial were based on standards that were not set forth in or consistent with the County Code, were not supported by substantial evidence in the record as a whole, and were arbitrary, capricious, or an abuse of discretion.

88.     Accordingly, the County's decision is in violation of, and preempted by, Idaho law, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order commanding the Defendants to approve the CUP Application.

## COUNT V
### (Deprivation of Due Process Based On Bias)

89.     Plaintiffs incorporate by reference and reallege the foregoing factual allegations in paragraphs 1 through 88 as if fully set forth herein.

90.     Defendant Board member Commissioner Visser's actions and comments conclusively establish that he had predetermined the outcome of the January 30, 2019, public hearing on the opponents' appeal of Horizon's Application.

91.     On January 8, 2019, one day before the Opponents' appeal of Horizon's Application originally was scheduled to be heard by the Board, Commissioner Visser appeared and spoke publicly at the January 8 Eagle City Council Meeting.

92.     At the January 8, 2019 Eagle City Council Meeting, Commissioner Visser stated his sympathy for the Opponents' position against Horizon's Application. Specifically, Commissioner Visser thanked the Eagle City Council for "supporting" (as opposed merely taking an interest in) the Opponents' appeal, and lamented that people have been "led astray" and "turned around" regarding "property rights" under Idaho law.

93.     During his unsolicited comments on the record during the January 8 Eagle City Council Meeting, Commissioner Visser stated that the property rights most worthy of protection are those of "existing landowners" (*i.e.*, the neighbors opposing Horizon's Application), rather than Horizon's property rights.

94.     Commissioner Visser's statements at the Eagle City Council meeting revealed his biased predetermination of the Opponents' appeal of Horizon's Application. The video recording of the January 8, 2019, Eagle City Council meeting makes clear that the context of the public comment at that point of the proceeding was organizing opposition to Horizon's Application.

95.     Immediately prior to the Board's January 30, 2019, public hearing, Commissioner Visser read a statement into the record disclosing his improper *ex parte* contacts with Opponents of Horizon's Application and his discussion, at the January 8, 2019, Eagle City Council meeting, of Horizon's Application. However, Commissioner Visser's disclosures were superficial at best. Commissioner Visser, as a member of the Board, which was sitting in a quasi-judicial capacity when it heard the Opponents' appeal of Horizon's Application, was charged with balancing the respective property rights of the Opponents and Horizon, not correcting what he personally (and incorrectly) perceived as an incorrect application of the law.

96.     Following the close of the January 30, 2019 Board public hearing, Commissioner Visser, reading from another pre-prepared, written statement, made a detailed motion to overturn the Planning and Zoning Commission's approval of Horizon's Application.

97.     A cornerstone of due process protection is the opportunity to be heard at a meaningful time and in a meaningful manner.  The "meaningful manner" prong is based on one's right to an impartial and disinterested tribunal. These constitutional requirements apply to administrative and quasi-judicial proceedings as well as the courts.  In fact, Idaho courts have held that the right to an impartial adjudicator is "imperative" in quasi-judicial zoning decisions. As a result, Idaho law flatly forbids biased decision makers from participating in land use applications.

98.     If a decision-maker: (1) has made up their mind regarding facts and will not entertain others with an open mind, or (2) will not apply existing law, or (3) has predetermined the outcome of the hearing prior to its conclusion, it violates the due process-based impartiality requirements of the Fifth and Fourteenth Amendments to the United States Constitution and Idaho Constitution Article I, Section 13.

99.     In this case, Commissioner Visser's statements make clear that he had made up his mind regarding the facts of Horizon's Application, would not apply existing law, and had predetermined the outcome of the hearing on Horizon's Application, all in violation of due process.

100.    Accordingly, the Board's denial of Horizon's Application was made in violation of due process under the Fifth and Fourteenth Amendments of the United States Constitution and Idaho Constitution Article I, Section 13.

**WHEREFORE,** Plaintiffs demands judgment against the Defendants as follows:

1.      An expedited review of the matters set forth in this Complaint pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2.      A judgment that the Defendants' actions and decisions have the effect of prohibiting the provision of personal wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

3.      A judgment that the Defendants' actions and decisions are not supported by substantial evidence in the written record in violation of 47 U.S.C. § 332(c)(7)(B)(iii);

4.      A judgment that the Defendants' actions and decisions were based the alleged environmental effects of RF emissions in violation of 47 U.S.C. § 332(c)(7)(B)(iv);

5.      A judgment that the Defendants' actions and decisions conflict with and violate Idaho law;

6.      A judgment that the Defendants' actions and decisions violate the Communications Act and are therefore void and invalid;

7.      Judgment holding that Defendants' actions and decisions violate the due process clause of the Idaho and Unites States Constitutions;

8.      An order requiring the Defendants to grant the Application and thereby approve the Proposed Facility;

9.      An order directing the Defendants to issue all ancillary approvals and permits necessary for the construction of the Proposed Facility;

10.     An award of Plaintiffs' costs, including reasonable attorneys' fees; and

11.     Such other and further relief as the Court may deem just and proper.


DATED this 16th day of April, 2019.

                        BRIAN WEBB LEGAL


                        */s/ Joshua Leonard*
                        Joshua J. Leonard, Of the Firm
                        Attorneys for Plaintiffs